IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| CHELSI MILLER, DANIEL MARTY, and CHRISTIE COTTON, on behalf of themselves and all persons similarly situated,<br><br>     Plaintiffs,<br><br><br><br><br><br>     vs.<br><br><br>CORINTHIAN COLLEGES, INC., and DOES 1 through 20, inclusive,<br><br>     Defendants. | MEMORANDUM DECISION AND ORDER GRANTING DEFENDANT'S MOTION TO COMPEL INDIVIDUAL ARBITRATION AND STAY PROCEEDINGS PENDING ARBITRATION<br><br><br><br><br><br><br>Case No. 2:10-CV-999 TS |

This matter is before the Court on Defendant's Motion to Compel Individual Arbitration and Stay Proceedings Pending Arbitration. Plaintiffs, former students at Everest College, seek to bring an action on behalf of themselves and others who are similarly situated against Defendant alleging four causes of action under the Utah Consumer Sales Practices Act ("UCSPA"), as well as claims for fraudulent misrepresentation, negligent misrepresentation, and declaratory judgment. Defendant seeks an order compelling Plaintiffs to submit their claims to arbitration

1

before the American Arbitration Association ("AAA") and to stay this matter pending arbitration, in accordance with the enrollment agreements signed by each Plaintiff. For the reasons discussed below, the Court will grant Defendant's Motion, compel individual arbitration, and stay this matter pending arbitration.

## I. BACKGROUND

Plaintiffs are all former students of Everest College, a career education institution wholly owned by Defendant. Plaintiffs allege that Defendant engaged in various deceptive practices, including making misrepresentations concerning the transferability of credits to other institutions and making misrepresentations and omissions concerning the costs of its program at Everest. Plaintiffs brought this putative class action against Defendant on behalf of themselves and others who are similarly situated. Plaintiffs allege four causes of action under the UCSPA, as well as claims for fraudulent misrepresentation, negligent misrepresentation, and declaratory judgment.

Defendant seeks an order compelling Plaintiffs to submit their claims to arbitration before the AAA and to stay this matter pending arbitration. In their enrollment agreements, each of Plaintiffs agreed to arbitration. Additionally, Plaintiffs Miller and Marty's arbitration agreements contained class action waivers. Based on the language in the enrollment agreements, and pursuant to the Federal Arbitration Act ("FAA"), Defendant argues Plaintiffs should be required to individually arbitrate their claims.

Plaintiffs oppose Defendant's Motion. Plaintiffs do not contest the existence of the arbitration agreements, nor do they question that their disputes fall within the scope of those agreements. Rather, Plaintiffs argue that the waivers run afoul of the UCSPA and, therefore,

cannot be enforced. Plaintiffs further argue that the arbitration agreements and class actions waivers are unconscionable. Plaintiffs final argument is that, if the Court concludes that a dispute of fact exists as to whether the arbitration agreements are unconscionable, they are entitled to discovery and a trial on that issue.

## II. DISCUSSION

A. THE FAA

The FAA provides, in relevant part, "[a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."[1]

Courts have adopted a "liberal federal policy favoring arbitration."[2] "In keeping with this liberal policy toward arbitration, courts are instructed to resolve 'any doubts concerning the scope of arbitrable issues . . . in favor of arbitration.'"[3]

Plaintiffs acknowledge the existence of the arbitration agreements here and do not dispute Defendant's assertion that their claims fall within the scope of those agreements. Plaintiffs argue that the arbitration agreements should not be enforced for the reasons discussed below.

---

[1] 9 U.S.C. § 2.

[2] *P & P Indus., Inc. v. Sutter Corp.*, 179 F.3d 861, 866 (10th Cir. 1999).

[3] *Id*. (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp*., 460 U.S. 1, 24 (1983)).

B.    THE UCSPA

Plaintiffs argue that the arbitration clauses are barred by the UCSPA.  Defendant argues

that Plaintiffs' claims under the UCSPA fail for a number of reasons.

1.    *The Provisions of the UCSPA*

The UCSPA enumerates various acts and practices that are deemed deceptive under the

Act.[4]  The UCSPA allows for class actions as follows:

> Whether a consumer seeks or is entitled to recover damages or has an adequate
> remedy at law, he may bring a class action for declaratory judgment, an
> injunction, and appropriate ancillary relief against an act or practice that violates
> this chapter.[5]

Further, with respect to monetary damages, "[a] consumer who suffers loss as a result of a

violation of this chapter may bring a class action for the actual damages caused by an act or

practice" if that act was prohibited by an administrative rule, judicial decision, or consent

judgment.[6]

The Act further provides that a supplier commits a deceptive act or practice if the supplier

knowingly or intentionally "includes in any contract, receipt, or other written documentation of a

consumer transaction, or any addendum to any contract, receipt, or other written documentation

of a consumer transaction, any confession of judgment *or any waiver of any of the rights to*

*which a consumer is entitled under this chapter.*"[7]

---

[4]Utah Code Ann. § 13-11-4(2).

[5]*Id*. § 13-11-19(3).

[6]*Id*. § 13-11-19(4)(a).

[7]*Id*. § 13-11-4(2)(q) (emphasis added).

Plaintiffs argue that, when read in conjunction, these provisions of the UCSPA bar the waivers at issue here. Defendant makes various arguments in opposition.

2.    *Statute of Limitations*

Defendant first argues that Plaintiffs' claims under the UCSPA are time barred. The UCSPA requires an action to be brought "within two years after occurrence of a violation of this chapter."[8] According to Plaintiffs' Complaint, the fraud perpetrated by Defendant "ends when the student is induced to sign an enrollment agreement and applications for tens-of-thousands of dollars in student loans."[9] Plaintiffs signed their enrollment agreements more than two years before the Complaint was filed. Therefore, Defendant argues that Plaintiffs' claims under the UCSPA are time barred.

This argument, however, is not without its problems. It could be argued that Defendant's deceptive acts continued each time Plaintiffs were required to obtain additional financing. This would likely have occurred at least once per year, likely leaving some claims within the limitations period. It could also be argued that any statute of limitations should be tolled because Defendant's deceptive acts prevented them from learning the truth. Under Utah law, a statute of limitations may be tolled where a plaintiff does not become aware of the cause of action because of the defendant's concealment or misleading conduct.[10] This form of equitable tolling may be applicable to Plaintiffs' claims, though the Court need not decide this issue. Based on these

---

[8] *Id*. § 13-11-19(8).

[9] Docket No. 2, Ex. A, ¶ 21.

[10] *See Russell Packard Dev., Inc. v. Carson*, 108 P.3d 741, 747 (Utah 2005).

considerations, the Court cannot conclusively find that Plaintiffs' claims under the UCSPA are time barred.

### 3. *Act or Practice Authorized Under Federal Law*

The UCSPA does not apply to "an act or practice required or specifically permitted by or under federal law . . . ."[11]  Pursuant to the FAA, arbitration clauses are clearly permitted under federal law.  Therefore, the UCSPA does not prohibit arbitration clauses generally.  While the FAA does not specifically address class action waivers, under *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*,[12] it seems that such waivers would be permitted under the FAA.[13]  Therefore, the Court doubts that the UCSPA bars the enforcement of the arbitration agreements here.  If the UCSPA did so, it would be preempted by the FAA, as discussed below.

### 4. *Whether Plaintiffs Have Asserted Claims Allowing Class Treatment under the UCSPA*

Defendant next argues that Plaintiffs have failed to assert claims that allow for class treatment under the UCSPA.  As stated above, the UCSPA allows for class treatment in narrow circumstances: when a consumer brings a claim for declaratory judgment, an injunction, and appropriate ancillary; and for money damages if that act was prohibited by an administrative rule,

---

[11]Utah Code Ann. § 13-11-22(1)(a).

[12]130 S.Ct. 1758 (2010).

[13]*Id*. at 1774, 1775 (stating that "parties may specify *with whom* they choose to arbitrate their disputes" and holding "that a party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party *agreed* to do so").

judicial decision, or consent judgment.[14] Defendant argues that Plaintiffs' claims do not fall into either of these categories.

Plaintiffs' Complaint does bring a claim for declaratory judgment and an injunction. Based on this, Plaintiffs' claims for declaratory judgment and an injunction may be permitted under the class action provisions of the UCSPA. Further, Plaintiffs' Complaint alleges that certain practices of Defendant violate the administrative rules authorized under the UCSPA.[15] Therefore, Plaintiffs' claims for money damages may also be cognizable under the class action provision of the Act. Therefore, it appears that Plaintiffs have brought claims under the UCSPA that would allow for a class action.

5.      *Whether the FAA Preempts the UCSPA*

Defendant argues that the FAA preempts any provision of the UCSPA invalidating arbitration agreements that do not authorize class-wide dispute resolution.

As stated, Section 2 of the FAA provides that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of *any contract*."[16] The Supreme Court has held that state contract law can therefore invalidate such agreements "if that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally."[17] "Thus, generally applicable contract

---

[14]Utah Code Ann. § 13-11-19(4)(a).

[15]Docket No. 2, Ex. A, ¶¶ 119-130.

[16]9 U.S.C. § 2 (emphasis added).

[17]*Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 686-87 (1996) (quotation, emphasis omitted).

defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening § 2."[18]  "Congress precluded States from singling out arbitration provisions for suspect status, requiring instead that such provisions be placed upon the same footing as other contracts."[19]

The Supreme Court has considered the issue of whether a state law is preempted by the FAA on a number of occasions.  In *Southland Corp. v. Keating*,[20] the Court held that the California Franchise Investment Law was preempted by the FAA.[21]  In *Southland*, the Court considered a portion of that law which provided: "Any condition, stipulation or provision purporting to bind any person acquiring any franchise to waive compliance with any provision of this law or any rule or order hereunder is void."[22]  "The California Supreme Court interpreted this statute to require judicial consideration of claims brought under the State statute . . . ."[23]  The Supreme Court held that, "[s]o interpreted the California Franchise Investment Law directly conflicts with § 2 of the Federal Arbitration Act and violates the Supremacy Clause."[24]

---

[18]*Id*. at 687.

[19]*Id*. (quotation marks and citation omitted).

[20]465 U.S. 1 (1984).

[21]*Id*. at 17.

[22]*Id*. at 10 (quoting Cal. Corp. Code § 31512 (West 1977)).

[23]*Id*.

[24]*Id*.

In *Casarotto*, the Supreme Court invalidated a Montana statute which rendered arbitration clauses unenforceable unless typed in underlined capital letters on the first page of the contract.[25]

In *Commerce Park at DFW Freeport v. Mardian Construction Co*,[26] the Fifth Circuit addressed the precise issue faced by this Court. The court addressed the interplay between the FAA and a Texas consumer protection statute.[27] The Texas statute, like the UCSPA, provided a cause of action to consumers who had suffered damages as a result of conduct proscribed by the act and provided that waiver of such a right was contrary to public policy and was void.[28] The Fifth Circuit, relying on *Southland*, found that the no-waiver provision of the Texas consumer protection statute, if given force, would abrogate the FAA and such abrogation would violate the Supremacy Clause.[29]

Similarly, the Ninth Circuit, in *Ting v. AT&T*,[30] found that the FAA preempted California's Consumer Legal Remedies Act because "the CLRA applies to such a limited set of [consumer] transactions" and, therefore, "is not a law of 'general applicability.'"[31] The Ninth

---

[25]*Casarotto*, 517 U.S. at 687.

[26]729 F.2d 334 (5th Cir. 1984).

[27]*Id*. at 337.

[28]*Id*.

[29]*Id*. at 338.

[30]319 F.3d 1126 (9th Cir. 2003).

[31]*Id*. at 1148.

Circuit also found the FAA to preempt a California law that "applies only to forum selection clauses and only to franchise agreements."[32]

The UCSPA applies to a narrow set of transactions. By its nature, it is limited to consumer transaction, not contracts generally. Further, there are certain contracts, such as securities, which are exempted from the Act. Because the Act does not apply to contracts generally, it cannot bar arbitration agreements under the FAA. To the extent that it does, it is preempted by the FAA under the case law discussed above.

For all of the reasons discussed above, Plaintiffs' argument that the UCSPA bars Defendant's Motion to Compel must be rejected.

C.     UNCONSCIONABILITY

Plaintiffs argue that the arbitration agreement and class action waivers are unconscionable. As stated above, "generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening § 2 [of the FAA]."[33]

In Utah, a party claiming unconscionability bears a heavy burden.[34] In determining whether a contract is unconscionable, the Court uses a two-pronged analysis.[35] "The first prong—substantive unconscionability—focuses on the agreement's contents. The second

_____

[32]*Bradley v. Harris Research, Inc.*, 275 F.3d 884, 890 (9th Cir. 2001).

[33]*Casarotto*, 517 U.S. at 687.

[34]*Ryan v. Dan's Food Stores, Inc.*, 972 P.2d 395, 402 (Utah 1998).

[35]*Id.*

prong—procedural unconscionability—focuses on the formation of the agreement."[36]  While substantive unconscionability alone may support a finding of unconscionability, procedural unconscionability without any substantive imbalance will rarely render a contract unconscionable."[37]

> Substantive unconscionability focuses on the contents of an agreement, examining the relative fairness of the obligations assumed.  In determining substantive unconscionability, we consider whether a contract's terms are so one-sided as to oppress or unfairly surprise an innocent party or whether there exists an overall imbalance in the obligations and rights imposed by the bargain . . . according to the mores and business practices of the time and place.  Even if a contract term is unreasonable or more advantageous to one party, the contract, without more, is not unconscionable-the terms must be so one-sided as to oppress . . . an innocent party.[38]

> Procedural unconscionability focuses on the negotiation of the contract and the circumstances of the parties. Our principle inquiry is whether there was overreaching by a contracting party occupying an unfairly superior bargaining position. Factors bearing on procedural unconscionability include:

> (1) whether each party had a reasonable opportunity to understand the terms and conditions of the agreement; (2) whether there was a lack of opportunity for meaningful negotiation; (3) whether the agreement was printed on a duplicate or boilerplate form drafted solely by the party in the strongest bargaining position; (4) whether the terms of the agreement were explained to the weaker party; (5) whether the aggrieved party had a meaningful choice or instead felt compelled to accept the terms of the agreement; and (6) whether the stronger party employed deceptive practices to obscure key contractual provisions.

> None of the factors is dispositive; rather, we consider all the circumstances in light of the doctrine's purpose to prevent oppression and unfair surprise.[39]

---

[36]*Id*.

[37]*Id*.

[38]*Id*. (quotation marks and citations omitted).

[39]*Id*. at 403 (quotation marks and citations omitted).

*1.      Arbitration Agreements*

The first issue to consider is whether the arbitration agreements themselves are unconscionable, without the class action waivers.[40]

*a.      Substantive Unconscionability*

Arbitration agreements, generally speaking, are not substantively unconscionable under Utah law.  The Utah Supreme Court has made clear "that arbitration agreements are favored in Utah."[41]  However, arbitration agreements may contain substantively unconscionable terms.  For example, the Utah Supreme Court in *Sosa v. Paulos*, found that an arbitration clause "requiring the patient to pay the doctor's arbitration fees (personal as well as for attorneys fees and costs) if the arbitration award [was] not more than half of the amount claimed" to be not only substantively unconscionable, but also against public policy.[42]

Plaintiffs argue that the arbitration agreements are substantively unconscionable because: (1) individual arbitration is not a practical, effective mechanism for Plaintiffs or the class they seek to represent; (2) the arbitration agreements prevent a review of Defendant's practices and eliminate any chance of preventing future harm through injunctive or class-wide relief; (3) the arbitration agreement are effective only against the students; and (4) the agreement in the arbitration agreement for Defendant to bear the costs does little to lessen the student's burden as they would still have to pay their own attorneys fees and expenses.

_____

[40]As stated, only two of the three enrollment agreements contain class action waivers, though class arbitration could not likely be maintained under *Stolt-Nielsen*.

[41]*Sosa v. Paulos*, 924 P.2d 357, 359 (Utah 1996).

[42]*Id*. at 361-62.

Here, the terms of the arbitration agreement provide that any arbitration will be conducted by the American Arbitration Association ("AAA"). Further, the agreement provides that the cost of the arbitration filing fee, arbitrator's compensation and facilities fees will be paid by Defendant, to the extent they are greater than the applicable court filing fee. Additionally, the agreements provide that any remedy available from a court under the law shall be available in arbitration.

Considering the substantive terms of the arbitration agreement here, the Court cannot find that it is substantively unconscionable. The arbitration agreement here is readily distinguishable from *Sosa* where the arbitration clause required the patient to pay the doctor's arbitration fees (personal as well as for attorneys fees and costs) if the arbitration award was not more than half of the amount claimed. Here, there is nothing substantively unconscionable about the terms of the arbitration agreements and the arguments raised by Plaintiffs do not touch on substantive unconscionability. Therefore, the arbitration agreements themselves are not substantively unconscionable.

### b. *Procedural Unconscionability*

The bulk of Plaintiffs arguments concern procedural unconscionability. As set forth above, procedural unconscionability focuses on the negotiation of the contract and the circumstances of the parties. The factors to consider include: (1) whether each party had a reasonable opportunity to understand the terms and conditions of the agreement; (2) whether there was a lack of opportunity for meaningful negotiation; (3) whether the agreement was

printed on a duplicate or boilerplate form drafted solely by the party in the strongest bargaining

position; (4) whether the terms of the agreement were explained to the weaker party; (5) whether

the aggrieved party had a meaningful choice or instead felt compelled to accept the terms of the

agreement; and (6) whether the stronger party employed deceptive practices to obscure key

contractual provisions.

The Utah Supreme Court found the arbitration agreement at issue in *Sosa* to be

procedurally unconscionable.[43]  In that case, Ms. Sosa was provided the arbitration agreement

just minutes before she was to undergo surgery, when she was already in her surgical clothing

and in a state of fear and anxiety.  Ms. Sosa felt "rushed and hurried" and did not read the

document.  The document was on a printed form drafted by her doctor, who was in a much

stronger bargaining position.  The document was given to Ms. Sosa without explanation and she

believed that signing it was necessary to proceed with the surgery and that the surgery could not

realistically be postponed or cancelled at that late stage.  "In short, Ms. Sosa was in a vulnerable

position when she was shown the document for the first time and asked to sign it."[44]  The court

found the agreement to be procedurally unconscionable.[45]

The court distinguished *Sosa* in *Ryan v. Dan's Food Stores, Inc*.  In *Ryan*, an employee of

a grocery store pharmacy argued that an acknowledgment form, which provided that he was an

at-will employee was unconscionable.  The court first concluded that the agreement was not

---

[43]*Sosa*, 924 P.3d at 362-65.

[44]*Id*. at 363.

[45]*Id*. at 364-65

14

substantively unconscionable, based on the fact that Utah law presumes employment to be at-will. The court then went on to consider procedural unconscionability. The court found that Ryan had a reasonable opportunity to understand the terms of the acknowledgment form and that the terms had been explained to him by his employer. Further, the court found no use of deceptive practices. As to the fifth factor, the court distinguished that case from *Sosa*, citing the unique facts of *Sosa* discussed above. The court recognized that the form was drafted solely by the employer and that Ryan did not have an opportunity to negotiate the at-will term, but stated "that these factors alone do not render the acknowledgment unconscionable."[46]

With these cases in mind, the Court turns to a consideration of the above-listed factors here. The first factor is whether each party had a reasonable opportunity to understand the terms and conditions of the agreement. Here, Plaintiffs assert that they did not read and understand the arbitration agreement and that they were rushed through the enrollment process. Plaintiffs assert that Defendant's enrollment process was designed to reduce their ability to read or understand the arbitration provisions. However, there is at least some evidence to suggest that Plaintiffs had the ability to read the agreement, though they did so quickly and understood that signing the agreements was a necessary step toward admission. Additionally, Plaintiffs had the ability to cancel the agreement in its entirety within three days.

The second and third factors are related: whether there was a lack of opportunity for meaningful negotiation and whether the agreement was printed on a duplicate or boilerplate form drafted solely by the party in the strongest bargaining position. Here, it is undisputed that the

---

[46]*Ryan*, 972 P.2d at 404.

form provided to Plaintiffs was a pre-printed form drafted by Defendant and that Plaintiffs had no meaningful opportunity to negotiate. "However, these factors alone do not render the [agreement] unconscionable."[47] As with the employment contract at issue in *Ryan*, all enrollment agreements will be drafted by the school and standard enrollment forms are common.[48] Further, arbitration agreements within contracts are commonplace.

Fourth, Plaintiffs provide declarations that the terms of the agreement were not explained to them. Further, the Motion to Supplement Exhibits contains information to suggest that Defendant's employees were specifically instructed no to go through each disclosure in the enrollment agreement, but instead be available for specific questions.

The fifth factors concerns whether the aggrieved party had a meaningful choice or instead felt compelled to accept the terms of the agreement. The Utah Supreme Court discussed this factor at length in distinguishing *Ryan* from *Sosa*:

> We distinguish Ryan's situation from that in *Sosa*, where we invalidated a medical arbitration agreement on unconscionability grounds. In that case, Sosa received an arbitration agreement along with two consent forms less than an hour before she underwent knee surgery. She was already dressed in surgical clothing when someone from her surgeon's office gave her the three documents, one of which was the arbitration form, and asked her to sign them. Neither her surgeon nor any of his staff ever discussed the arbitration agreement with Sosa. At the time she received the forms, Sosa was nervous and anxious and also felt rushed to sign the documents. We concluded that Sosa was in a vulnerable position when she signed the arbitration agreement and found it both procedurally and substantively unconscionable.
> In contrast, the undisputed facts of this case show that Dan's gave Ryan an opportunity to review the handbook and ask questions, both of which Ryan did.

---

[47]*Id*.

[48]*Id*.

Ryan concedes that he understood the at-will term. However, Ryan argues that Dan's coerced him into signing the acknowledgment form by refusing to give him his paycheck until he did so. Even if true, this did not eviscerate Ryan's choice whether to accept the terms of the acknowledgment. Ryan could have refused to sign the acknowledgment and thereafter obtained his paycheck. Alternatively, Ryan could have signed the acknowledgment form, received his paycheck, quit Dan's, and sought employment elsewhere, as the at-will term permitted him to do. Although Ryan may have wanted to work at Dan's, he was free to seek employment with another pharmacy that did not maintain at-will employment.[49]

The case is much more like *Ryan* than *Sosa*. Like *Sosa*, Plaintiffs felt rushed and hurried and did not read the enrollment agreements in full. However, as in *Ryan*, Plaintiffs simply could have refused to sign the enrollment agreement and pursued their academic interest elsewhere. Further, Plaintiffs had a right to cancel the agreements in their entirety within three days. While signing the enrollment agreement was necessary for Plaintiffs to enroll at the school, enrolling at a school is clearly distinguishable from the imminent surgery at issue in *Sosa*.

Finally, Plaintiffs have provided some evidence to suggest that Defendant employed deceptive practices to obscure key contractual provisions. Much of the evidence provided by Plaintiffs concern the high pressure sales tactics used by Defendant's employees and the attempts to quickly enroll students. Further, Plaintiffs' Complaint is rife with allegations of Defendant's alleged deceptive practices. Thus, there is at least some suggestion that Defendant used deceptive practices in the enrollment.

Considering all of the above factors, the Court finds that the arbitration agreements are not procedurally unconscionable. While there is evidence to show that Plaintiffs felt rushed into signing the enrollment agreements and that Defendant may have employed questionable practices

---

[49] *Id*. at 403-04 (citation omitted).

in getting students to sign enrollment agreements, in the end each Plaintiff had the ability to refuse to sign the agreement and not enroll at Everest. Even if Plaintiffs did sign the agreements, they had the ability to cancel them within three days. The Court cannot find, based on all of the facts presented here, that the agreements here are procedurally unconscionable.

      2.    *Class Action Waivers*

Two of the three arbitration agreements also contained class actions waivers. Even though Plaintiff Cotton's enrollment agreement did not contain a class action waiver, under *Stolt-Nielsen*, class arbitration could not be maintained absent an agreement to allow for class arbitration.[50]

The analysis of whether a class action waiver provision is unconscionable under Utah law is the same as that set forth above. Specifically, the Court considers whether a class action waiver provision is substantively unconscionable and whether it is procedurally unconscionable.

The first issue to consider is whether a class action waiver is substantively unconscionable. No Utah case has considered whether class action waivers are substantively unconscionable. That does not mean, however, the Court is without guidance on this issue. As set forth above, the Utah Supreme Court in *Sosa* held that an arbitration clause which required a patient to pay the doctor's arbitration fees (personal as well as for attorneys fees and costs) if the arbitration award was not more than half of the amount claimed was substantively unconscionable. The class action waiver provision here provides no such requirements. The class action waiver simply require students to arbitrate their claims on an individual basis.

---

[50] *Stolt-Nielsen*, 130 S.Ct. 1758, 1775.

Plaintiffs have provided nothing to suggest that, under Utah law, class action waiver provisions would be considered substantively unconscionable. While Plaintiffs have cited provisions of the UCSPA which provide class-wide relief to consumers in certain situations, the Court cannot find that such provisions denote a public policy in opposition to class action waivers. Indeed, recent statements by the Utah Attorney General in an *amicus* brief to the United States Supreme Court suggest that Utah favors the enforcement of class action waiver provisions.[51] Therefore, the Court cannot find that the class action waivers are substantively unconscionable under Utah law. Additionally, for the same reasons set forth above, the Court finds that the class actions waivers are not procedurally unconscionable.

D.      DISCOVERY AND TRIAL

Plaintiffs argue, in the alternative, that if the Court concludes that a dispute of fact exists with respect to whether the arbitration agreements are unconscionable, then Plaintiffs are entitled to discovery and a trial on that issue. Plaintiffs argue that, if Defendant is able to present evidence that conflicts with the declarations provided by Plaintiffs, then a dispute of fact would exist entitling them to a jury trial. Here, Defendant has not submitted any evidence to dispute Plaintiffs' declarations, therefore, there is no need for discovery or a trial on this issue. Rather, this is an issue to be decided by the Court considering the factors set forth above.

E.      STAY PENDING DECISION IN *AT&T v. CONCEPCION*

At oral argument, the Court asked counsel their positions on whether this matter should be stayed pending a decision by the United States Supreme Court in *A&T v. Concepcion*.

---

[51]*See* Docket No. 20, Ex. A.

*Concepcion* involves an appeal from the Ninth Circuit Court of Appeals where the court held that an arbitration agreement was unconscionable under California law.[52] After consideration of the issue, the Court has determined that a stay is not appropriate. The Court basis this decision on two things: (1) the differences between California law and Utah law concerning unconscionability; and (2) the differences between the facts of the cases.

As stated, *Concepcion* involves California law. The California Supreme Court has held that class action waivers are at least sometimes unconscionable under California law.[53] There is no such ruling from the Utah Supreme Court. Under California law, courts apply a three-part test to determine whether a class action waiver in a consumer contract is unconscionable: "(1) is the agreement a contract of adhesion; (2) are disputes between the contracting parties likely to involve small amounts of damages; and (3) is it alleged that the party with superior bargaining power has carried out a scheme deliberately to cheat large numbers of consumers out of individually small sums of money."[54] As set forth above, Utah law is different.

Further, the facts of this case are considerably different from those in *Concepcion*. In that case, the damages amount involved was very small, approximately $30.[55] As a result, the incentive for individuals to bring individual action was diminished without access to class-wide

---

[52]*Laster v. AT&T Mobility*, 584 F.3d 849 (9th Cir. 2009).

[53]*Discover Bank v. Superior Court*, 113 P.3d 1100, 1108 (Cal. 2005).

[54]*Laster*, 584 F.3d at 854.

[55]*Id*. at 855.

relief. By contrast, Plaintiffs seek a large amount of damages and there is no diminished incentive to proceed on their claims individually.

For these reasons, the Court will not await a decision in *Concepcion* before issuing its decision. If, however, either party believe that the decision that is ultimately issued in *Concepcion* is relevant to the Court's decision here, that party may petition the Court for reconsideration.

### III. CONCLUSION

It is therefore

ORDERED that Defendant's Motion to Compel Individual Arbitration and Stay Proceedings Pending Arbitration (Docket No. 6) is GRANTED.

The Clerk of the Court is directed to administratively close this matter.

DATED February 14, 2011.

BY THE COURT:

_____
TED STEWART
United States District Judge